IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Knockout Holdings, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Arvinder Kakar,<br><br>    Defendant. | Civil Action No. 1:23-cv-944 |

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment.

Plaintiff Knockout Holdings, LLC ("Knockout") was formerly known as Octo Platform Equity Holdings, LLC ("Octo Platform"). Octo Platform was the parent of two subsidiaries, Octo Consulting Group, LLC ("Octo Consulting") and Octo Equity Holdings Parent, LLC ("Octo Parent").[1] Plaintiff refers to itself as "Octo" throughout its briefings, but the Court attempts to disentangle the entities.

In December 2020, Octo Consulting acquired Sevatec, Inc. ("Sevatec"), a technology company Defendant Kakar owned and founded. As consideration, Kakar received a lump-sum payment; Kakar's holding company, Seva Holdings, Inc. ("Seva"), received membership units in Octo Platform; Octo Consulting hired Kakar as an

---

[1] Plaintiff, in consecutive paragraphs, claims Octo Parent was the parent of Octo Platform and the subsidiary of Octo Platform. Compare ECF 101 at 9 ¶ 1 (Octo Platform was "formerly owned by [Octo Parent].") with ¶ 2 (Octo Platform "sold its subsidiaries Octo Parent and Octo Consulting . . . ."). The Court believes Plaintiff intended to write "Octo Platform formerly owned Octo Parent" in paragraph one—an understanding consistent with other pleadings that refer to Octo Parent as a subsidiary of Octo Platform.

1

employee; and Octo Platform appointed Kakar to their board of directors. Soon after the acquisition, however, the relationship between Kakar and the Octo entities soured. In August 2021, Octo Platform's board delivered a notice of material breaches and willful misconduct to Kakar. Kakar denied wrongdoing and refused to address the matters presented in the notice. Kakar resigned as an executive of Octo Consulting in November 2021 and resigned as a director of Octo Platform in January 2022. In January 2022, Kakar sued members of Octo Platform's board of directors in Fairfax Circuit Court and sued Octo Consulting in Delaware Superior Court. In February 2022, Octo Platform delivered a notice to Seva that Octo Platform intended to repurchase Seva's membership units in Octo Platform. In May 2022, Seva sued Octo Platform and Octo Consulting in Delaware Chancery Court.

On October 28, 2022, International Business Machines Corp. ("IBM") offered to purchase Octo Parent and Octo Consulting—Octo Platform's two subsidiaries. Octo Platform and IBM executed that sale on November 18, 2022. IBM publicly announced its acquisition of Octo Parent and Octo Consulting on December 7, 2022, and the transaction closed on December 23, 2022. The purchase price paid to Octo Platform did not change after November 18, 2022, though Knockout claims it continued to negotiate certain rights and obligations with IBM up until the transaction's closing.

Kakar called Cecelia DeCamp, an IBM employee, on December 7, 2022, following IBM's public announcement of its transaction with Octo Platform. During his conversation with DeCamp, Kakar discussed his lawsuits against Octo Platform and Octo Consulting and, at least to some extent, his negative opinions of the Octo entities. Following DeCamp's call with Kakar, several other IBM employees learned of Kakar's

2

contact and, to varying degrees, the details he relayed. On December 9, 2022, an IBM employee emailed one of Octo Platform's directors, informing him of Kakar's contact. Octo Platform initiated this lawsuit on July 18, 2023. Octo Platform's complaint alleges two counts: Count I for defamation *per se* and Count II for declaratory judgment.

Under Rule 12(c), a motion for judgment on the pleadings is "assessed under the same standards" as a motion to dismiss under Rule 12(b)(6). Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013). The Court accepts as true all well-pleaded allegations in the plaintiff's complaint and draws all reasonable factual inferences in the plaintiff's favor. Pulte Home Corp. v. Montgomery Cnty., Md., 909 F.3d 685, 691 (4th Cir. 2018) (citing Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 705 (4th Cir. 2016)). A motion for judgment on the pleadings is properly granted if it appears certain that the plaintiff cannot prove any set of facts in support of its claim entitling it to relief. Id. (citing Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014)).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News & Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir.2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To state a claim for defamation under Virginia law, a plaintiff must allege: (1) publication of (2) an actionable statement with (3) the requisite intent. Schaecher v. Bouffault, 290 Va. 83, 91, (2015) (citing Tharpe v. Saunders, 285 Va. 476, 480 (2013)). A

3

statement is defamatory *per se* if it imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties or prejudices the party in their profession or trade. Yeagle v. Collegiate Times, 255 Va. 293, 297 (1998). "Tort liability under state law," however, "is circumscribed by the First Amendment." Snyder v. Phelps, 580 F.3d 206, 217 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011) (citing New York Times Co. v. Sullivan, 376 U.S. 254, 264–65 (1964)). "Pure expressions of opinion are constitutionally protected and cannot form the basis of a defamation action. Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." Tharpe, 285 Va. at 480 (cleaned up). Whether an alleged defamatory statement is one of fact or of opinion is a question of law to be resolved by the trial court. Id. In making that determination, the Court must not "isolate one portion of the statement at issue from another portion of the statement." Hyland v. Raytheon Tech. Servs. Co., 277 Va. 40, 47 (2009).

In Potomac Valve & Fitting Inc. v. Crawford Fitting Co., 829 F.2d 1280 (4th Cir. 1987), a manufacturer of one tube fitting, Potomac Valve, sued two manufacturers of another tube fitting, Crawford Fitting and Dibert Valve. Id. at 1282. Potomac Valve commissioned a third party to test whether its product was freely interchangeable with Crawford Fitting and Dibert Valve's product—their product being the older and more established. Id. The test concluded the tube fittings were interchangeable, but the defendants suspected Potomac Valve rigged the test. Id. at 1983. In an article in Crawford Fitting's newsletter for its distributors, Crawford's marketing manager wrote that "[t]his was a (purposely) very poor test designed to snow the customer." Id. at 1983 & n.4. After Crawford's distributors began

similarly criticizing the test, Potomac Valve sued the defendants for defamation, alleging the critique caused them to lose business. Id. at 1983. This Court granted summary judgment for the defendants, and plaintiffs appealed. Id.

In its decision, the Fourth Circuit assessed the "constitutional distinction between fact and opinion." Id. at 1286. Because "there is no constitutional value in false statements of fact," the First Amendment does not protect statements of fact from liability under state defamation law. Id. at 1285 (quoting Gertz v. Welch, 418 U.S. 323, 339–40 (1974)). The "threshold" test for whether a statement was fact or opinion considers the statement's verifiability: if the defendant's words can be described as true or false—that is, the words can be proven or disproven—then those words are actionable as a statement of fact. Id. at 1288. But, even if allegedly defamatory words pass the threshold test, they may still receive First Amendment protection: a verifiable statement "nevertheless qualifies as an 'opinion' if it is clear . . . that a reasonable reader or listener would recognize its weakly substantiated or subjective character—and discount it accordingly." Id. That is, such a verifiable statement may be protected if it "can best be understood from its language and context to represent the personal view of the author or speaker who made it." Id.

The Fourth Circuit first held the statement in the article was a verifiable statement: either the test was purposely designed to "snow" the customer or it was not. Id. at 1289. But the district court decided the statement was nonetheless an opinion by assessing the statement's "context in the article as a whole." Id. First noting "plaintiffs prefer to discuss the last sentence of the article in isolation," the Fourth Circuit "agree[d] with the district court that, when properly viewed in context, the statement in

5

question readily appears to be nothing more than the author's personal inference from the test results." Id. at 1289–90. Further, the Fourth Circuit held that "a reasonable reader would recognize" that the statement—found in Crawford Fitting's marketing material—was "likely to reflect the professional interests of the Crawford Fitting Company." Id. at 1290. In sum, the court affirmed, holding "that when viewed in context it is clearly an opinion, and therefore protected by the First Amendment." Id.

Knockout's amended complaint, Dkt. No. 62, alleges in general terms that Kakar, in his conversation with DeCamp, made verifiably false statements: for example, "Octo cheated him out of substantial compensation," id. ¶ 67, and "Octo improperly acquired his shares in the company," id. ¶ 70. Assuming without deciding these allegations state a defamation claim, Knockout's complaint strips those statements from their context in Kakar's conversation with DeCamp. Both parties rely extensively on DeCamp's deposition testimony, Dkt. No. 71-7, in their summary judgment pleadings. See Carlson v. Bos. Sci. Corp., 856 F.3d 320, 324 (4th Cir. 2017) (affirming district court's reliance on evidence cited by parties in summary judgment pleadings). There, DeCamp recalls that Kakar spent parts of the December 7th phone call describing his various litigations against Octo entities. Dkt. No. 71-7 at 13:17–22; 15:14–19; 21:22–22:7. It was while DeCamp learned of these litigations for the first time that Kakar said "he was wronged by them," id. at 14:10, "they were not truthful individuals," id. at 14:19–20, and "they lied to him," id. at 21:15. The context of Kakar's conversation with DeCamp colors these statements.

Like the sentence at issue in Potomac Valve, the context of Kakar's statements indicates their subjective character. In Potomac Valve, the Fourth Circuit found that "a

reasonable reader would recognize that the contents of the [newsletter] are likely to reflect the professional interests of the Crawford Fitting Company," 829 F.2d at 1290; reasonable newsletter readers would not "expect [the newsletter] to contain a dispassionate and impartial assessment of the [tube fitting] test." Id. The context of Kakar's conversation with DeCamp similarly colors his assessment of the Octo entities. Having described his adversarial relationship with the Octo entities in ongoing litigation, a reasonable listener would not expect Kakar's characterization of those entities to be dispassionate or impartial. Rather, in context, Kakar's statements were "recognizable as opinions, and thus likely to be taken with a grain of salt." Potomac Valve, 829 F.2d at 1288 n.26. Though Knockout could possible disprove Kakar's statements, the statements Knockout complains of, "when viewed in context," were Kakar's opinions and "therefore protected by the First Amendment." Id. at 1290.

Lastly, Knockout's request for a declaratory judgment fails alongside its defamation claim. To bring a declaratory judgment action under 28 U.S.C. § 2201, the plaintiff must establish the existence of a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests; and that is real and substantial." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (cleaned up). Knockout's declaratory judgment claim alleges several agreements between the Octo entities and Kakar—e.g., Kakar's employment, board, and operating agreements—prohibit Kakar from defaming Knockout. But, because Kakar's statements are not actionable as defamation, there is no controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. Accordingly, the Court declines to declare the rights and obligations imposed by the

7

agreements Knockout describes. See <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995) (holding "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act"). For these reasons, it is hereby

  **ORDERED** that Kakar's motion for summary judgment is **GRANTED**.

Alexandria, Virginia
July 31, 2024

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE